**BUILDERS STEEL CO., INC.; Commercial Ceilings and Drywall, Inc.; Gaines Plumbing and Piping, Inc.; and City Tent & Awning Co., Inc., Appellants,**

**and**

**Arrow Concrete Co., Plaintiff,**

**v.**

**HYCORE, INC.; Brookside Realty, Ltd.; Hycore Commercial Realty, Inc.; A & D Supply of Tulsa, Inc.; Falcon Excavating Co., Inc.; C & C Tile & Carpet Co.; Dyer Glass & Mirror, Inc.; Water Store, Inc.; Horner Glass Corporation; EVS, Inc.; Pacesetter Electric; George W. Switlyk; and Cropper 1985 Limited Partners, Limited Partners of Brookside Realty, Ltd., an Oklahoma limited partnership, Defendants,**

**and**

**Gilbert Grubbs; T. Ray Phillips III; Jack Herrold; Donald Herrold; and Ron Main, Appellees.**

**No. 78995.**

Court of Appeals of Oklahoma,
Division No. 4.

March 8, 1994.

Rehearing Denied April 11, 1994.

Certiorari Denied June 22, 1994.

Kelly F. Monaghan, Wilkinson & Monaghan, Tulsa, for appellants.

Donald E. Herrold, Jack N. Herrold, Herrold, Herrold & Davis, Inc., Ronald Main, Main & Downie, P.C., Tulsa, for appellees.

BRIGHTMIRE, Judge.

The plaintiffs—five subcontractors with liens for unpaid labor and material they furnished during construction of a shopping center—instituted this action against five limited partners of a limited partnership which owned subject shopping center, to recover a judgment for the amount of contribution each limited partner is said to owe the partnership.[1] Their theory is that because the general contractor with whom they contracted was in fact also deceptively acting in an undisclosed dual capacity as the general partner of the defendants, the plaintiffs are de facto creditors of the limited partnership, and

---

1. This claim was set up in an amended petition. The original petition, setting up a claim for fore-  closure of liens filed by the plaintiffs, is not involved in this appeal.

as such may compel the defendants to fulfill unpaid mandatory assessments they owe to the partnership.

The limited partners denied owing the partnership any money, filed a counterclaim charging the plaintiffs with deception,[2] and later filed a motion for summary judgment.

The trial court granted the defendants a summary judgment and awarded them an attorney's fee against the plaintiff companies.[3]

The plaintiffs contend the judgment should be reversed because the trial court erred in: (1) Granting summary judgment in favor of the defendants, when the plaintiffs, as *creditors* of the partnership, were entitled to require the defendants to make additional contributions to the partnership pursuant to an unperformed assessment due under the partnership agreement; (2) awarding an attorney's fee to the partners; and (3) approving a journal entry of judgment which contained findings of fact the plaintiffs contend the trial court did not make.

We hold that the first two contentions have merit and, because the judgment is being reversed, it is unnecessary to consider the third one.

2. The counterclaim was subsequently dismissed by the defendants.

3. Each of the defendants made a $125 offer pursuant to 12 O.S.1991 § 1101. None of the plaintiffs accepted the offer and therefore the defendants say they are entitled to their attorney's fee and other costs.

4. The limited partnership was comprised of Max A. Heidenreich, as the general partner, and

## I

The operative facts are these. On March 25, 1987, one Max A. Heidenreich signed a document entitled *Limited Partnership Agreement of Brookside Realty, Ltd.*[4] (BRL). The company was organized to purchase both the land and building located on the southwest corner of 45th Street and Peoria in the City of Tulsa, Oklahoma—formerly known as the Holmes Elementary School—within 60 days or else the partnership would dissolve. BRL planned to develop a commercial and retail center on the property to be known as Brookside Center. The general partner was authorized to negotiate a loan of up to $2,200,000 for the acquisition and improvements.

On August 31, 1987, Heidenreich signed, swore to and filed with the Secretary of State a *Certificate of Limited Partnership of Brookside Realty, Ltd.* The certificate recited that he did so as "Agent and Attorney-in-Fact for each limited partner, pursuant to the terms of the Partnership Agreement of the Partnership, as amended through the date hereof, and the Subscription Agreement, Signature Page and Special Power of Attorney executed by each such Limited Partner."[5] Page two of the certificate listed

George W. Switlyk, Gilbert Grubbs, T. Ray Phillips III, Jack Herrold, Donald Herrold, Ron Main, and Cropper Realty 1985 Limited Partners, as the limited partners.

5. The certificate of partnership and each amendment thereof was signed by Heidenreich as general partner and by the limited partners as follows:

"IN WITNESS WHEREOF, the parties hereto have hereunto affixed their signatures and seals as of the date first above written.

Witness:

GENERAL PARTNER:

/s/ Max A. Heidenreich
_____

Max A. Heidenreich

LIMITED PARTNERS:

Witness:

/s/ Max A. Heidenreich
_____

Max A. Heidenreich, *Agent and Attorney-in-Fact for each limited partner, pursuant to the terms of the Partnership Agreement* of the Partnership, as amended through the date hereof, and the Subscription Agreement, Signature Page and Special Power of Attorney executed by each such Limited Partner" (Emphasis added.)

the names, addresses and amount "to be contributed by" each limited partner.

The contributors were as follows: Defendant Grubbs agreed to contribute $20,000 cash, assume personal liability in the amount of $255,000, render "-0-" services, and be liable for a future assessment in the amount of $145,000. Defendant Phillips agreed to contribute $5,000 cash, assume personal liability in the amount of $127,500, render "-0-" services, and be liable for a $72,500 future assessment. The other three defendants, the Herrolds and Main, each agreed to contribute $5,000 cash, assume personal liability in the amount of $63,750, render "-0-" services, and be liable for a $36,250 future assessment. The foregoing data was "restated" in an amended certificate signed by Heidenreich on December 22, 1987, and filed January 4, 1988, and again "restated" in a second amended certificate signed by Heidenreich on April 28, 1989, and filed May 9, 1989. And finally, for some unexplained reason a third amended certificate was filed May 18, 1989—signed by Heidenreich two days earlier—which reaffirmed the previous contribution data *except for the assessments and personal liability assumptions.*

With the foregoing in mind, we return now to late 1987. Heidenreich signed a "contract" with "Hycore Commercial Realty"[6] (Hycore) on December 2, 1987, which called for Hycore to act as the general contractor for the construction project. A significant fact to note at this point is that Max Heidenreich admitted in an affidavit executed August 1, 1990, that he was both the general partner of BRL and the president of Hycore when the purported contract between BRL and Hycore was executed by Max Heidenreich on behalf of BRL, and by Kathy Heidenreich, Max Heidenreich's wife, on behalf of Hycore as its *"president."*[7] The reason for this subterfuge—making it appear to the plaintiffs that they were contracting with a third-party entity—was evidently to protect BRL from liability on the contracts.

Work began in January 1988. The plaintiffs performed their contracts but were not fully paid. They timely filed liens against the center property and on August 4, 1989, filed this action to foreclose their liens.[8] All of the plaintiffs alleged the existence of contracts with either "Hycore Commercial Realty,"[9] or "Hycore, Inc.," to furnish material and labor in constructing the improvements on the property. On April 17, 1990, the plaintiffs' lawsuit was consolidated with a mortgage foreclosure action filed against subject property by a lender. The mortgagee is not a party to this appeal.

Following this Max Heidenreich filed a voluntary petition for relief under Chapter 7 of the U.S. Bankruptcy Code. Three of the plaintiffs in the instant action, Gaines Plumbing and Piping, Inc., Commercial Ceilings and Drywall, Inc., and Builders Steel Co., Inc., filed an adversary proceeding in Heidenreich's bankruptcy challenging the dischargeability of Heidenreich's liability for payment of the obligations owed to them arising from the Brookside Center construction contracts. They prevailed. On March 26, 1990, the bankruptcy court found as a

---

6. This is the name of the contracting entity shown on a copy of the contract attached to the defendants' motion for summary judgment. In his affidavit, however, Heidenreich refers to the entity as "Hycore Commercial Realty, Inc., an Oklahoma corporation." This is in keeping with the requirements of 18 O.S.1991 § 1006, viz., that a corporation is to identify itself with either "co.," "corp.," or "inc.," etc. Assuming the two entities are one and the same, the entity appears to have been acting either as an undisclosed agent of BRL in making the contracts with the subcontracting plaintiffs, or as BRL d/b/a Hycore Commercial Realty when the contracts with the plaintiffs were made.

7. Heidenreich's admission is in an affidavit which was attached to the defendants' Motion for Partial Summary Judgment. It stated that at all times material in this case he was the *president* of Hycore Commercial Realty, Inc., as well as the sole *general partner* of Brookside Realty, Ltd.

8. On September 14, 1989, the petition was amended to add City Tent & Awning, Co., Inc., as a party plaintiff.

9. See n. 6 infra.

fact that the following "entities, more particularly Hycore, Inc., Brookside Realty Limited Partnership, Hycore Commercial Realty, Inc., and Hycore Realty are in fact one and the same of [*sic*] Mr. Heidenreich [and] none of the parties involved in this matter could have known who they were doing business with...." Based on its findings, the bankruptcy court awarded each of the subcontractors a nondischargeable judgment against Heidenreich for the amount of their respective claims.

A short time later, on April 25, 1990, the plaintiffs filed a second amendment to their petition in the instant case naming the limited partners of BRL as party defendants. They alleged that since they in fact extended credit to BRL during a time when each of the limited partners was obligated to the partnership for additional mandatory assessments, the plaintiffs had a right, as *creditors* of the partnership, to require the payment of those assessments to the extent of the partnership's indebtedness to them.

After denying all bases for liability, the limited partner defendants filed a motion for partial summary judgment which the trial court sustained and, in addition, awarded the defendants a further judgment for an attorney's fee and costs.[10]

The creditors appeal.

## II

The primary issue the plaintiffs tender for review can be framed this way: Subject summary judgment was impermissible because (1) the creditors of a partnership venture may enforce the unpaid contribution obligations of the limited partners, and (2) a question of fact exists as to whether the limited partners have fully paid their contributive obligations created by the partnership agreement.

■ Preliminarily, we review briefly the parameters of the trial court's power to summarily adjudicate. It is proper only if there is no substantial controversy as to any material fact and the uncontroverted facts warrant the granting of a judgment to one party or the other as a matter of law.[11] If a material fact is controverted, however, or if the uncontroverted facts fail to support a reasonable inference favorable to the moving party, then a summary judgment is inappropriate.[12] In determining whether a summary judgment was properly granted, the appellate court will examine the pleadings, depositions, affidavits, and other evidentiary material submitted by the parties.[13]

■ Here the defendants' argument is that granting them a summary judgment was appropriate because the plaintiffs failed to submit a counter-affidavit in opposition to the affidavit of the partnership's general partner, Max Heidenreich—an omission, they say, which demonstrates that there are no controverted facts. In other words, the defendants maintain that the mere absence of a counter-affidavit is a sufficient basis for affirming the trial court's decision.

While that may be true in some cases, it is not in this one. Though the plaintiffs did not submit a counter-affidavit as such, they did submit a substantial amount of competent evidentiary material which controverted certain significant parts of Heidenreich's affidavit. Included in the material submitted by the plaintiffs was a copy of the certificate of the Brookside limited partnership together with pertinent amendments;[14] copies of pertinent partnership correspondence; an excerpt from the deposition of Max Heiden-

---

10. The partial summary judgment became a final appealable judgment after the defendants dismissed their counterclaim for deceit.

11. *Flanders v. Crane*, 693 P.2d 602 (Okl.1984).

12. *Ross v. City of Shawnee*, 683 P.2d 535 (Okl. 1984).

13. *Farmer v. Ford*, 812 P.2d 821 (Okl.App.1991).

14. Included was the Certificate of Limited Partnership filed August 31, 1987, with the Okla-

homa Secretary of State; a first amendment to the partnership, filed January 4, 1988; and a second amendment to the partnership, filed May 9, 1989. This evidence shows that each of the defendant limited partners had a continuing obligation to contribute future assessments in specified amounts. A third amendment to the partnership, filed May 18, 1989, omitted reference to the limited partners' liability for future assessments and personal liability assumptions.

reich; and an extract from the transcript of the bankruptcy court's decision in the Heidenreich adversary proceeding.

The evidentiary materials submitted by the parties disclose the following undisputed material facts, legal conclusions and issues of fact: (1) Although Heidenreich was president of Hycore, the so-called "general contractor," he concealed this fact by having his wife sign the subcontracts with the plaintiffs as Hycore's "president"; (2) the legal consequence of these admitted facts is that in executing the subcontracts with the plaintiffs, Hycore/Heidenreich was acting as an undisclosed agent on behalf of an undisclosed principal, namely, BRL; [15] (3) because Heidenreich's artifice prevented the plaintiffs from knowing that they were in fact contracting with BRL, the partnership and its partners are estopped to deny that the plaintiffs in fact extended credit to BRL or otherwise relied on the defendants' obligations to BRL; [16] (4) a factual issue exists concerning whether the defendant limited partners have ever paid the mandatory assessments they agreed to pay in the partnership agreement; [17] (5) if it is found that all obligations and assessments have not been paid, a question exists as to how much remains unpaid; and (6) there remains the question of the legal effect on the liability of the limited partners as a result of appointing Heiden-

reich their "Agent and Attorney-in-Fact" to sign amendments of the terms of BRL certificates from time to time—a question requiring the adduction of evidence concerning the facts and circumstances surrounding the various amendments, the reasons for them, and what each was intended to accomplish.

And finally, if the assessment issue is resolved in the plaintiffs' favor, they contend that they have a right under Oklahoma law, as *creditors* of the partnership, to require payment of the assessments by the limited partner defendants.[18] They cite 54 O.S.1991 § 329(C), which provides:

> "Unless otherwise provided in the partnership agreement, the obligation of a partner to make a contribution or return money or other property paid or distributed in violation of this act may be compromised only by consent of all the partners. Notwithstanding the compromise, a creditor of a limited partnership who extends credit or otherwise acts in reliance on that obligation after the partner signs a writing which reflects the obligation and before the amendment or cancellation thereof to reflect the compromise, may enforce the original obligation."

In this regard, the plaintiffs attached to their response a copy of the certificate of limited partnership filed with the Oklahoma Secre-

**15.** It has long been the rule that "For most purposes the contract of an agent, who deals in his own name without disclosing that of his principal, is the contract of the principal, and when discovered the principal may be held liable, as a general rule, unless it clearly appears that the contracting party intended to give exclusive credit to the agent." *Smith v. Cornwell & Chowning Lumber Co.*, 101 Okl. 86, 223 P. 154 (1923).

It should also be noted that even if Hycore had been a bona fide entity, unrelated to BRL, the validity of subject contract would be suspect since it was neither signed nor attested by corporate officers. And since the sham contract was contrived by BRL's general partner for the benefit of BRL, it will be considered the contract of, for, and binding on BRL.

**16.** *See Sellers v. Sellers,* 428 P.2d 230 (Okl.1967).

**17.** To establish the fact that the defendants have paid all they are obligated to pay, they place reliance on the statement of Heidenreich. Because, however, the statement along with other material submitted by the defendants disclose the

subterfuge practiced on the plaintiffs we mentioned earlier, a serious question is presented concerning Heidenreich's credibility. In this regard we also note that the defendants themselves did not file affidavits stating they fully paid all of their agreed obligations, nor did they attach supporting evidence of whatever payments they made such as cancelled checks, receipts, etc. This situation, coupled with a continual reaffirmance of the defendants' obligations in a series of amended certificates with only the last one omitting the assessment obligation, provide a sufficient basis for an inference that the defendants have not paid their agreed obligations.

**18.** Work on the Brookside Center was performed by:

(1) Builders Steel between 1–27–88 and 7–14–88;

(2) Commercial Ceilings and Drywall between 1–19–88 and 12–9–88;

(3) Gaines Plumbing and Piping between 5–12–88 and 1–17–89; and

(4) City Tent & Awning between 5–25–88 and 7–20–88.

tary of State which does in fact list specific future assessments owed by each of the limited partners, and copies of correspondence from Max Heidenreich to various limited partner defendants discussing the assessments.[19]

The defendants argue, however, that paragraph 5 of the first amendment to the Certificate of Limited Partnership is a disclaimer and therefore eliminates any basis for the plaintiffs' reliance on the limited partners' future liability to the partnership. Paragraph 5, as amended, provides:

> "Future assessments indicated above may be called only for limited purposes specifically authorized by the general partner and pursuant to the terms of the Partnership Agreement. No other creditor may rely on the above information as a representation of future assessments for the purpose of any claim...."

The trouble is this argument overlooks the notice limitations of 54 O.S.1991 § 316, which says:

> "The fact that a certificate of limited partnership is on file in the Office of the Secretary of State is notice that the partnership is a limited partnership and the persons designated therein as general partners are general partners, *but it is not notice of any other fact.*" (Emphasis added.)

Finally, the defendants point to the provisions of 54 O.S.1991 § 320(A), which provides in relevant part:

> "[A] limited partner is not liable for the obligations of a limited partnership unless he is also a general partner or, in addition to the exercise of his rights and powers as a limited partner, he participates in the control of the business...."

This argument is irrelevant because the question here is not about the defendants' liability for the obligations of the limited partnership, but how much they owe the

general partner under their limited partnership agreement.

As we mentioned earlier, the plaintiffs' action rests on a § 329(C) enforcement of the defendants' allegedly unfulfilled obligations to contribute mandatory assessments to the partnership as required by the provisions of the Certificate of Limited Partnership and amendments in effect when credit was extended to the partnership.[20]

The limited partner defendants contend, on the other hand, they have not only paid all the assessments they were liable for but, even if they had not, they are not liable to the creditors of the general contractor, Hycore. They further state that the plaintiffs are not *creditors* of the partnership but are merely *lienors* whose right of recovery is limited to such amounts as might be obtained from a foreclosure of their liens on partnership property.

We have previously determined that the plaintiffs are creditors of BRL. We further hold their action against the defendants is not to foreclose their liens but to establish the defendants' unpaid contribution and assessment liability to the partnership, and to recover a judgment against the defendants for what is owed to the plaintiffs to the extent of such contribution or assessment liability.

We conclude, therefore, that under all the facts and circumstances presented by the evidentiary materials, the trial court was not justified in basing a summary judgment on a "finding" that the defendants "have paid all ... assessments [and] that no further obligations are due to the limited partnership from the Defendants and that no obligation of or from any limited partner, inclusive of the Defendants has been compromised by the limited partnership[.]"

We further hold that whether the defendants have satisfied their contribution and assessment commitments raises one or more material controverted factual issues.

---

**19.** These letters were written by Max Heidenreich to each of the limited partners requesting them to obtain letters of credit in a sum equal to each partner's percentage of interest in the partnership, to become effective after one year. The letters further state that the letters of credit would provide Heidenreich time to obtain addi-

tional financing for the Brookside project. There is no evidence that any of the limited partners procured the letters of credit as requested.

**20.** See n. 13.

III

The summary judgment is therefore reversed and the cause is remanded for trial. Likewise, the attorney's fee order is vacated.

REVERSED AND REMANDED.

TAYLOR, P.J., concurs.

STUBBLEFIELD, J., concurs in result.