INTERNATIONAL INVESTORS, a limited partnership; Financial Factors, Ltd., an Alaska corporation; Auke Bay Company Profit Sharing Trust; Creative Investments No. 1, a limited partnership; National Bank of Alaska, as custodian for the H.P. Head Rollover IRA; and National Bank of Alaska, as custodian for the R.E. Greisen Rollover IRA, Appellants,

v.

BUSINESS PARK FUND, an Alaska limited partnership; Leslie B. Pace, individually and as a general partner of Business Park Fund; Richard H. Rapp, individually and as a general partner of Business Park Fund; Herbert E. Eckmann, individually and as a general partner of Business Park Fund; Partnership Management Corporation, individually and as a general partner of Business Park Fund; Land Title Company of Alaska, Inc., successor-in-interest to Broker's Title Company; Curtis L. Anderson; Robert O. Anderson; Marion A. Arturo; Abbie G. Arturo; Peter A. Barker; Marilyn H. Barker; Marilyn J. Beach; David W. Beach; Daniel C. Beach; Ronald D. Beach; James A. Bennett; Connie S. Bennett; Ole K. Bevolden; Herdis Bevolden; Rex I. Bishopp; Ruth M. Bishopp; Estate of William E. Blackmon; Charles A. Brodahl; Erdie P. Brodahl; Ann E. Burbank; Raymond W. Burbank; William J. Burnison; David L. Byrd; Sue S. Byrd; Richard M. Carlson; Carol B. Carlson; Howard W. Castle; Jay Castle; Gunter Christoph; Alice L. Christoph; Robert A. Coats; William Fortune Coghill; Geraldine Stephens Coghill; William Fortune Coghill and Geraldine Stephens Coghill Revocable Trust; Dennis Colligan; Doris S. Colligan; Frank D. Cox; Esther J. Cox; Ronald L. Davis; Theresa A. Davis; Michael L. Delbecq; Muriel E. Delbecq; Louis A. Delbecq; William M. Dinkins; Edith S. Dinkins; Jewell D. Donchak; Joseph Donchak; L. Catherine Doogan; Carol J. Douthit; Eva Eckmann; E.K.S. Partnership; Nora H. Ekstedt; Donald V. Elliott; Terry A. Ellis; Theresa A. Ellis; Carroll I. Erickson; Robert C. Farkas; Kathleen A. Farkas; Gary D. Ferguson; Kun Yea Ferguson; Thomas R. Fink; Sylvia S. Fink; Todd E. Fisher, Cynthia A. Fisher, Carolyn K. Fowler; Robert A. Garrett; Dorothy D. Garrett; Roland E. Gower, M.D., P.C. Profit Sharing Trust; Roland E. Gower, J.D., P.C. Money Purchase Pension Trust; Frank B. Gregory; Merada A. Gregory, Gene E. Griffin, Marsha K. Griffin; Irvin W. Hale; Wanda M. Hale; Robert L. Hall; John R. Hall; JRRL Enterprises; Robert L. Hanson; Willa M. Hanson; James C. Harle; Michael T. Hart; Georgette M. Hart, Hart Family Revocable Trust; Robert G. Henke; Charlotte M. Henke; Alys P. Hopkins; Harold J. Hopkins, Dr. Ward A. Hulbert; I.M.A. Money Purchase Pension & Profit Sharing Plans: FBO Richard F. Buchanan; I.M.A. Pension Fund; FBO George L. Stewart Account; Warren R. Jackson; Margaret L. Jackson, Personal Representative of the Estate of Warren R. Jackson; Jasi Company; Theresa Jelacic; Wayne D. Jensen; Rita J. Jensen; Curtis D. Jensen; Deborah L. Jensen; George J. Johnson; Patricia M. Johnson; Daniel B. Jordan; Marian M. Jordan; Danny T. Kara; Janis M. Kara; Patricia I. Kier; Jacob C. Knapp; Mildred C. Knapp, Kaare Kraakmo; Erhard Krinke; Kjell Kristiansen; Marit Kristiansen; Jane Langston; Alfred N. Lanum; Julianne M. Lanum; Barbara J. Lavish; Douglas W. Lindstrand; Patricia F. Lindstrand, Duane C. Luedke, Shirley M. Luedke; Jack Mclean; Josephine Mclean; Gary R. Masog; Verna J. Mathews; Lloyd L. Mathews; Frances McDowell; William F. McDowell; Leonard Michels; Anita Michels; Ronald D. Moon, Katherine L. Moon; Howard L. Morgan; Margo J. Morgan; Dorotha L. Muir; Robbie Jay Muir; John H. Nabors, Jr., individually; Mary B. Nabors, individually; Mary B. Nabors Family Trust; Mary B. Nabors and John H. Nabors, Trustees under the Mary B. Nabors Family Trust; David C. Nelson; Judith A. Nelson; Norman

Neuls; Marjorie M. Norman; Richard A. Norman; Kenneth D. Owsichek; Lorane W. Owsichek; Valborg Pace; Evonne H. Phillips; Pacific Land Company; Gerald G. Palmer; Alice J. Palmer; Kenneth W. Pitcher; Mary L. Pitcher; Donald C. Pridemore; Wanda J. Pridemore; Richard H. Rapp, Jr.; Richard H. Rapp; Jane S. Rapp; Marlene Rapp, Redi Electric, Inc. Profit Sharing Trust; John J. Repasky; Barbara J. Repasky; M. Dale Riley; Owen F. Saupe; Bernice I. Saupe; Thomas B. Schaafasma; Robert H. Schaeffer; Rose L. Schaeffer; James L. Scheffel; Mary Ellen Segelhorst; N.E. Segelhorst; Roland F. Stickney; Phyllis A. Stickney; Linda J. Stiffler f/k/a/ Linda J. Blackmon; Donald L. Stiffler; Stanley L. Sutton; Laura E. Sutton; Josephine C. Thorson; Walker & Walker Revocable Trusts; Lemoine A. Webber; Juanita Webber; Henry T. Weil; Barbara L. Weil; Millard Lee Woodson; Georgia B. Woodson; Joyce E. Zerkel, individually; Joyce E. Zerkel Declaration of Trust; K. Gene Zerkel, individually; K. Gene Zerkel Declaration of Trust; Dexter C. Zernia; 3 D Company, Appellees.

No. S-8648.

Supreme Court of Alaska.

Nov. 12, 1999.

Rehearing Denied Jan. 4, 2000.

James N. Reeves, Dorsey & Whitney LLP, Anchorage, for Appellants.

Richard A. Helm, Andrew D. Steiner, Helm & Associates, Anchorage, for Appellees N.E. and Mary Ellen Segelhorst.

Tonja J. Woelber, Anchorage, for Appellees Todd E. and Cynthia A. Fisher.

John R. Strachan, Anchorage, for Appellees represented by Duane C. Luedke.

Steven S. Tervooren, Hughes, Thorsness, Powell, Huddleston & Bauman, LLC, for Appellee Robert A. Coats.

Before MATTHEWS, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

MATTHEWS, Chief Justice.

### I. INTRODUCTION

The Business Park Fund, a limited partnership, defaulted on a note payable to International Investors. International sued the Business Park Fund's limited partners, seeking to collect their unpaid capital subscriptions. The superior court entered a final judgment releasing the limited partners from all liability, ruling that International could not enforce the note directly against them. We reverse because limited partners are liable to creditors for the amount of their obligation to the partnership, including unpaid contributions.

### II. FACTS AND PROCEEDINGS

#### A. Facts

On April 3, 1981, Richard Rapp and Leslie Pace jointly purchased a parcel of Anchorage property from International. Rapp and Pace bought the property for a small amount of cash and a promissory note of $4,342,400 which was secured by a deed of trust on the property. The note was payable in semi-annual installments of over $200,000 after a balloon payment.

On August 1, 1981, Rapp, Pace, and Herbert Eckmann, formed Business Park Fund (BPF), a limited partnership. They were the general partners. BPF's stated purpose was the ownership and development of the property. The partnership agreement authorized the sale of 148 limited partnership units and required for each unit the payment, over time, of $110,400 in capital contributions, plus assessments. Six thousand dollars were to be paid initially, and semi-annual install-

ments were to be paid over the subsequent nineteen years.

To secure payment of limited partners' contributions, the agreement granted BPF a security interest in each unit. The partnership's remedies against defaulting limited partners included suing for unpaid contributions and selling or purchasing their units.

The agreement gave the general partners exclusive authority to conduct the partnership business. It authorized them to lease, "sell, purchase, exchange, develop or convey title to Partnership property," to lend and borrow money, and to encumber partnership property. The liability of each limited partner for BPF's debts was capped by the amount of the partner's promised capital contribution.

The agreement was filed as an Agreement and Certificate of Limited Partnership on October 7, 1981. The next day, Rapp and Pace deeded the property to BPF. The deed provided that it was "subject to" International's deed of trust securing the promissory note.

The September 1987 installment payment on the note was not made, and real estate taxes were then in default. International threatened collection proceedings against Pace and Rapp. Pace and Rapp, individually, and with Eckmann, on behalf of BPF, entered into a "Memorandum of Agreement" with International in January of 1988. International promised forbearance from foreclosure, extended the time for payment of the September arrearages and back taxes, reduced the amount of the installment due in March of 1988 and extended the time for payment of the balance of the March installment. The Memorandum of Agreement recited that BPF had assumed the note and that Pace and Rapp and BPF were jointly and severally liable on the note.

Note modifications were made in 1989 and 1993, waiving prior defaults, extending the payment schedule, and changing the interest rate. By 1994, when this suit was brought, Pace, Rapp and BPF were again in default on the note.

In the late 1980s a number of limited partners defaulted on their obligations to make capital contributions. BPF's practice was either to buy back the units in default with an offset bid representing unpaid capital contributions or take unit assignments in lieu of foreclosure, releasing the unit owners from further obligations to make capital contributions. BPF filed a number of amended Certificates of Limited Partnership reflecting that the former owners of the defaulted units re-acquired by BPF were no longer partners. The first amended certificate was filed May 10, 1988. Between then and the commencement of this suit, amended certificates covering more than half of the partnership units were filed. One, filed August 1, 1994, also eliminated all future liability for capital contributions for all partners who were current on their contributions through March 1994.

### B. *Proceedings*

On August 15, 1995, International filed its first amended complaint in its suit for foreclosure of the deed of trust and sought a deficiency judgment against BPF's past and present limited partners. Some limited partners moved to dismiss the complaint, arguing that the statute of limitations had expired. The superior court ruled that International could recover contributions owed by the limited partners that became due within six years before the complaint was filed, but that recovery of contributions due before then was barred.

International moved for partial summary judgment on the issue of whether BPF had assumed the promissory note. In response, various limited partners filed cross-motions for summary judgment. The superior court issued an omnibus order ruling that (1) BPF had assumed the note in January of 1988, not, as International contended, in 1981; (2) those limited partners who had assigned their interest to BPF prior to the assumption of the note were not liable to International; and (3) the liability of the remaining limited partners was "co-extensive with their capital contributions."

In response to motions regarding the meaning of the omnibus order, the superior court entered final judgment under Civil Rule 54(b) in favor of all limited partners, dismissing International's claims against

them. The court also awarded attorney's fees to the limited partners, including full fees to some of them.

International appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

 A summary judgment may be affirmed if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[1] Whether genuine issues of material fact exist is reviewed de novo.[2] Questions of law are also reviewed de novo, and we will adopt the rule of law "most persuasive in light of precedent, reason, and policy."[3]

### B. *Summary of the Parties' Contentions and Our Resolution of Them*

International makes four arguments on appeal. It contends: (1) that the superior court erred in ruling that the limited partners' unpaid capital contributions could not be enforced by a partnership creditor; (2) that the superior court erred in its ruling concerning the statute of limitations; (3) that the superior court erred in ruling that the note was assumed in January of 1988 rather than in 1981; and (4) that the superior court erred in awarding full attorney's fees to certain of the limited partners.

Three separate briefs on behalf of different groups of limited partners were filed. Viewed collectively, these briefs respond to all of International's arguments except for its argument concerning the statute of limitations.

In addition, the brief of appellees N.E. and Mary Ellen Segelhorst argues that there are alternative grounds for affirming the dismissal. They contend that in 1988 they were

1. *See Voigt v. Snowden,* 923 P.2d 778 (Alaska 1996).

2. *See Nielson v. Benton,* 903 P.2d 1049, 1052 (Alaska 1995).

3. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

4. Ch. 128 SLA 1992 § 3(a).

5. Former AS 32.10.160 (repealed 1992) provided:

validly released by BPF from their obligation to make future capital contributions and that this release is binding on International. They also contend that the modifications of the note after the filing of the amended certificate deleting them as limited partners relieved them of any liability they might otherwise have had. International has responded to the Segelhorsts' contentions.

For the reasons that follow, we conclude that International is correct with respect to its first two arguments concerning direct liability and the statute of limitations, that it is not necessary to decide its third argument as to whether BPF assumed the note in 1981 rather than in January of 1988, and that, as to International's fourth argument, the award of attorney's fees must be reversed since the appellees are not prevailing parties. With respect to the Segelhorsts' alternative grounds, we conclude that they do not support affirmance of the judgment.

### C. *A Creditor of a Limited Partnership May Sue Limited Partners for Their Unpaid Capital Contributions*

 The Alaska Revised Limited Partnership Act, AS 32.11, is, with some changes, the "Revised Uniform Limited Partnership Act of 1976 With the 1985 Amendments" (ULPA 1985) propounded by the National Conference of Commissioners on Uniform State Laws. The 1976 version of the ULPA (without the 1985 amendments) was in effect in Alaska until July 1, 1993, when ULPA 1985 replaced it. But the provisions of ULPA 1976 governing pre-July 1, 1993 partnership contributions, including promised contributions, remained in effect.[4] As this case concerns contributions promised before 1993, it is governed by Alaska's ULPA 1976, particularly former AS 32.10.160.[5]

(a) A limited partner is liable to the partnership

(1) for the difference between the limited partner's contribution as actually made and that stated in the certificate as having been made, and

(2) for any unpaid contribution that the limited partner agreed in the certificate to make in the future at the time and on the conditions stated in the certificate.

(b) A limited partner holds as trustee for the partnership

A defining characteristic of a limited partnership is that limited partners are not liable for the obligations of the partnership.[6] But limited partners are liable to partnership creditors to the extent that they have not paid promised capital contributions. This rule is reflected in former AS 32.10.160(c), which recognizes the right of "a creditor of a partnership ... to enforce such liabilities."

Case law interpreting ULPA 1985, 1976, or the 1916 Limited Partnership Act confirms the right of creditors to proceed against limited partners to the extent of their unpaid contributions.[7] Secondary authorities agree: "Unpaid contributions of limited partners are obligations to the partnership and are generally enforceable by the ... creditors of the partnership." [8]

Some of the limited partners argue that AS 32.10.160(a) means that a creditor cannot proceed directly against a limited partner because it provides that "a limited partner is liable to the partnership" for unpaid contributions. But this liability is not said to be exclusive. In view of the language of subsection .160(c), recognizing the right of a creditor to enforce such liabilities, the only sensible construction of subsection .160(a) is that it does not imply that limited partners are only answerable to the partnership for unpaid contributions. Case law confirms the correctness of this interpretation.[9]

■ Some of the limited partners also argue that the limited partnership agreement limits their liability for unpaid contributions. They contend that the partnership's remedy was limited to forfeiture of a limited partner's previous contributions, and that International seeks "super third-party beneficiary status" by claiming relief broader than the "forfeiture of contribution" remedy.

But the partnership agreement does not suggest that the partnership's exclusive remedy against defaulting limited partners is forfeiture of their units. The limitation of liability for partnership debts in the agreement is expressed in terms of "the amount *committed* by the Limited Partner as the capital contribution as set forth in Section 8." (Emphasis added.) Section 8, in turn, commits limited partners to contribute $6,000 initially plus semi-annual payments until the year 2001, yielding total payments of $110,400, plus assessments. The agreement also provides that the partnership's general partners may, in their sole discretion, utilize "any one or more" of the agreement's remedies against limited partners delinquent in their contribution payments. One of these enumerated remedies permits general partners to "[s]ue for the *unpaid amount* of the annual payments and assessments, due *or to become due*." (Emphasis added.)

Thus, nothing in the partnership agreement restricts limited partners' obligations to payments already made. The liability of each limited partner is, to use hornbook lan-

---

(1) specific property stated in the certificate as contributed by the limited partner, but that was not contributed or that has been wrongfully returned, and

(2) money or other property wrongfully paid or conveyed to the limited partner on account of the limited partner's contribution.

(c) The liabilities of a limited partner as set out in this section can be waived or compromised only by the consent of all members; but a waiver or compromise does not affect the right of a creditor of a partnership, who extended credit or whose claim arose after the filing and before a cancellation or amendment of the certificate, to enforce such liabilities.

(d) When a contributor has rightfully received the return in whole or in part of the capital of the person's contribution, the contributor is nevertheless liable to the partnership for a sum, not in excess of such return with interest, necessary to discharge its liabilities to all creditors who extended credit or whose claims arose before the return.

**6.** *See* AS 32.11.120(a).

**7.** *See e.g., In Re Sharps Run Assocs.*, 157 B.R. 766, 772 (D.N.J.1993); *Federal Deposit Ins. Corp. v. Bachman*, 894 F.2d 1233, 1237–38 (10th Cir. 1990); *Nashville City Bank & Trust Co. v. Massey*, 540 F.Supp. 566, 579 (M.D.Ga.1982); *Engleman v. Malchow*, 91 Cal.App.2d 341, 205 P.2d 413 (1949); *Klein v. Weiss*, 284 Md. 36, 395 A.2d 126, 139 (1978); *Indiana Mortgage & Realty Investors v. Spira–Mart*, 115 Mich.App. 141, 320 N.W.2d 320, 321–22 (1982).

**8.** III Alan R. Bromberg . & Larry E. Ribstein, *Bromberg & Ribstein on Partnership* §§ 12.08(a), (c), 15.16(b) (1999).

**9.** *See* cases cited *supra* note 7.

guage, "for ... any contribution that he has promised but not yet made." [10]

D. *A Creditor's Suit Against a Limited Partner Is Governed by the Same Period of Limitations as That Applicable to a Suit Against the Partnership*

■ The trial court ruled that the six-year statute of limitations contained in former AS 09.10.050 applied to International's claims against limited partners. The court ruled that any contribution due but not paid more than six years before the suit was commenced would be barred.

■ International challenges this ruling. It argues that the period of limitations for its claims against limited partners should be the same as the period governing its claim against the partnership. Since International and BPF last agreed to extend the note in 1993 and part payments were made in 1993, the suit against the partnership was timely.[11] In support of its position International refers by analogy to the law of third-party beneficiaries as reflected in section 309 of the Restatement (Second) of Contracts. Generally the right of a third-party beneficiary to enforce a promise made by a promisor to a promisee is not subject to the defenses that the promisor might have if the claim were brought by the promisee.[12] Comment (c) to section 309 explains that "the beneficiary's right is direct, not merely derivative...." Illustration 11 shows that statute of limitations defenses are covered by the rule expressed in section 309(3):

A, a bank, goes out of business, transferring assets to B, another bank, in consideration of B's promise to pay A's deposit liabilities. The applicable statute of limitations does not bar deposit liabilities of a going bank until six years after demand. In an action by C, a depositor of A, it is no defense to B that C's claim against A is barred by the statute of limitations.

Authorities have recognized that a creditor of a limited partnership seeking enforcement of a limited partner's promise to make capital contributions is a third-party beneficiary of the limited partner's promise to the partnership.[13] International's citation to section 309 of the Restatement (Second) of Contracts therefore seems apt. To use the terms of the Restatement, International, beneficiary, has claims against limited partners, promisors, who, in turn, might have a valid statute of limitations defense if the claim were brought by BPF, promisee. But "the right of [International] against [the limited partners] is not subject to [the limited partners'] defenses against [BPF]." [14]

In addition, International's position is logical. To the extent that a limited partner has not made capital contributions, the limited partner is liable to partnership creditors directly just as a general partner is. Since a partnership, at least in its external relations, is not an entity separate from its general partners,[15] it follows that the time for accrual of a creditor's claim should be the same whether the claim is asserted against a partnership or a general partner. If so, the same result should obtain when the claim is asserted against a limited partner who has unpaid capital contributions.

Practical reasons also suggest that the same period of limitations should govern claims against limited partnerships and limited partners. Otherwise a creditor who has liberally extended due dates on a partnership

---

**10.** Harold Gill Reuschlein and William A. Gregory, *The Law of Agency and Partnership* 445 n. 31 (2d ed.1990).

**11.** *See* AS 09.10.200 (acknowledgment in writing of continuing contract starts statute running anew); AS 09.10.210 (part payment starts statute running anew).

**12.** Restatement (Second) of Contracts § 309(3): "[Subject to exceptions] the right of any beneficiary against the promisor is not subject to the promisor's ... defenses against the promisee...."

**13.** III Alan R. Bromberg & Larry E. Ribstein, *Bromberg & Ribstein on Partnership* § 12.08(c) (1999); *see also Continental Waste Sys., Inc. v. Zoso. Partners,* 727 F.Supp. 1143, 1149–50 (N.D.Ill.1989); *Builders Steel Co. v. Hycore, Inc.,* 877 P.2d 1168 (Okla.App.1994).

**14.** Restatement (Second) of Contracts § 309(3).

**15.** *Williams v. Mammoth of Alaska, Inc.,* 890 P.2d 581, 584 (Alaska 1995).

debt might find itself without any effective remedy because the partnership has allowed the limitations period governing its enforcement of limited partners' contribution obligations to expire. The result, effectively, would be a waiver of the partners' contribution obligations without the notice protection inherent in the requirement of a filed amended certificate provided in subsection .160(c).[16]

### E. International's Other Points on Appeal

International argues that the court should have concluded that BPF assumed the note in 1981 rather than in 1988. We do not think that it is necessary to rule on this question, for International has not established that it is of any consequence in this case. Under subsection .160(c) the release from liability of a limited partner to a creditor is dependent on the time a certificate of amendment is filed. No certificate of amendment was filed in this case prior to January 1988, when the note clearly was assumed.

International's argument concerning the award of attorney's fees to the appellees need not be considered. The award must be reversed since the appellees are no longer the prevailing parties in view of our decision on the other issues in this case.

### F. Alternative Grounds for Affirmance—Segelhorst Appellees

Through 1987 the Segelhorsts made contribution payments of $61,000 on their two limited partnership units. In July of 1988 they conveyed their units to BPF using an "Assignment in Lieu of Default Remedies." In exchange, BPF released them from their obligation to make future contributions. The assignment was signed by Pace as general partner of BPF and "as Attorney–in–Fact for all Limited Partners." An amended certificate was filed in 1988, showing that the Segelhorsts were no longer limited partners.

■ The Segelhorsts claim that the waiver that they obtained from BPF discharges them from any liability to International. Al-

ternatively, they argue that the modification of the note after the amended certificate was filed released them from any liability. Although these claims were not ruled upon by the superior court, the Segelhorsts are correct in asserting that this court may affirm on grounds which were not relied on by the superior court.[17]

1. *The release of the Segelhorsts from the obligation to make future capital contributions was not binding on International.*

■ Subsection .160(c) provides that a waiver of the liabilities of a limited partner by the partnership does not affect the right of a creditor to enforce such liabilities if the creditor "extended credit ... after the filing and before a cancellation or amendment of the certificate...." The Segelhorsts contend that the January 1988 modification of the note was not an extension of credit by International since no new money was lent. They also argue that the 1988 modification was simply an extension of the time for payment as contemplated under the original terms of the note. They argue that a clause in the note prevents the 1988 modification from being considered an extension of credit within the meaning of subsection .160(c). The clause provides: "The undersigned, whether principal, surety, guarantor, endorser, or other party hereto, ... agree that this note or any payment thereunder may be extended from time to time ... *without in any way affecting the liability of such parties.*" (Emphasis added.) Finally, the Segelhorsts argue that even if the 1988 modification were to be considered an extension of credit, the only credit extended was the amount of the arrearage, not the whole amount of the note. The arrearage was eventually paid and "therefore any extension of credit has been satisfied."

We believe that the modification agreement of January 1988 was an extension of credit. While no case law construing the meaning of the term "extended credit" in the context of ULPA has been found, the

---

16. *See infra* Parts III.E and III.F.1.

17. *See O'Callaghan v. State,* 920 P.2d 1387, 1390 n. 1 (Alaska 1996); *Ransom v. Haner,* 362 P.2d 282, 285 (Alaska 1961).

term is commonly understood to encompass agreements which defer payment or enforcement of an existing debt. A federal criminal statute, 18 U.S.C. § 891(1), defines "to extend credit" to mean "to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred." Similarly, a number of cases construe terms similar to "extended credit" to include deferral of debt or forbearance from debt collection.[18] We believe that these authorities reflect a general consensus as to what constitutes an extension of credit which is applicable to ULPA 1976 and the January 1988 agreement.

The clause in the note stating that the time for payment can be extended without "affecting the liability of" makers or guarantors is intended to negate the possibility that an extension might release parties from liability.[19] If this clause actually *resulted* in the release of otherwise liable parties, as the Segelhorsts argue, this would be directly opposite to what was intended. In our view, the clause cannot reasonably be read as negating the effect of the term "extended credit" in subsection .160(c).

The Segelhorsts' third argument, that the effect of the extension of credit terminated when the 1988 arrearages were paid, also lacks merit. No authority is cited to support this point. Subsection .160(c) requires only an extension of credit. It does not suggest that the effect of an extension of credit which takes the form of forbearance can later be eliminated by partial payments while the overall debt remains unpaid.

> 2. *Modification of the note after the certificate of amendment was filed did not discharge the Segelhorsts.*

██ Here the Segelhorsts argue that they were discharged because the note was twice modified after the amended certificate was filed eliminating them as limited partners. They contend that "the obligation in place when the Segelhorsts were part of the limited partnership ... has been replaced." We reject this argument as well.

The "obligation in place" when the Segelhorsts were limited partners was the 1981 note. The latter two modifications to the note made clear that they were merely amendments and did "not constitute either a new debt or a new deed of trust note." The note was thus not replaced, and it expressly provided that it could be amended without releasing parties liable on it.

## IV. CONCLUSION

For the above reasons we REVERSE the judgment of the superior court and REMAND this case for further proceedings consistent with the views expressed herein.

FABE, Justice, not participating.

---

18. *See In re Duncan,* 123 B.R. 383 (Bkrtcy. C.D.Cal.1991) ("extension of credit" includes "renewal" of debt); *Nordic Bank PLC v. Trend Group, Ltd.,* 619 F.Supp. 542 (S.D.N.Y.1985) (forbearance is an extension of credit under 12 U.S.C. § 1972(1)); *see also* 15 U.S.C. § 1601(a) (governing practices of "firms engaged in the extension of consumer credit"); 15 U.S.C. § 1602(e) (defining "credit" as including "the right granted by a creditor to a debtor to defer payment of debt").

19. *See State v. McKinnon,* 667 P.2d 1239, 1243–44 (Alaska 1983) (discussing the common law rule that a surety is discharged from liability if time of payment is extended without the surety's consent).